**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BANK OF AMERICA, N.A.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | |
| | § | |
| **SAYERS CONSTRUCTION, LLC;** | § | **CASE NO.** 1:21-cv-01097 |
| **CANYON POWER SOLUTIONS, LLC;** | § | |
| **MARK A. SAYERS;** | § | |
| **JENNIFER SAYERS,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

## PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT

COMES NOW Bank of America, N.A. ("***Plaintiff***" or "***the Bank***") and hereby files its Original Verified Complaint against Sayers Construction, LLC ("***Sayers Construction***") and Canyon Power Solutions, LLC ("***Canyon Power***") (collectively, "***the Borrowers***" and each a "***Borrower***"), and Mark A. Sayers and Jennifer Sayers (collectively, "***the Guarantors***" and each a "***Guarantor***"), by showing the Court the following:

### I.     THE PARTIES

1.     Plaintiff Bank of America, N.A. is and at all relevant times was a national banking association chartered under the laws of the United States of America with its main office and principal place of business located in Charlotte, North Carolina as designated in its Articles of Association, and as such, is a citizen of the State of North Carolina for diversity jurisdiction purposes by virtue of 28 U.S.C. § 1348.

2.     Upon information and belief, defendant Sayers Construction, LLC is and at all relevant times was a Texas limited liability company, which conducts business within the State of

Texas and has its principal place of business at 104 East Martin Luther King Drive, San Marcos, TX 78666. Upon further information and belief, it and all of its members are citizens of Texas for diversity jurisdiction.

3.      Upon information and belief, defendant Canyon Power Solutions, LLC is and at all relevant times was a Texas limited liability company, which conducts business within the State of Texas and has its principal place of business at 201 Whispering Valley, Dripping Springs, TX 78620. Upon further information and belief, it and all of its members are citizens of Texas for diversity jurisdiction.

4.      Upon information and belief, defendant Mark A. Sayers is and at all relevant times was a natural person who is a citizen of the State of Texas and resides at 201 Whispering Valley, Dripping Springs, TX 78620.

5.      Upon information and belief, defendant Jennifer Sayers is and at all relevant times was a natural person who is a citizen of the State of Texas and resides at 201 Whispering Valley, Dripping Springs, TX 78620.

## II.      JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is diversity between the Plaintiff and Defendants.

7.      Venue is proper pursuant to 28 U.S.C. § 1391(a) in that the principal place of business and place of residence of all Defendants is located in the Western District of Texas.

## III.      NATURE OF THE ACTION

8.      This is an action by the Bank as a commercial lender to:

(a)      enforce its rights in connection with a certain loan agreement between the

2

Bank and the Borrowers pursuant to which the Bank extended a line of credit to the Borrowers in the maximum principal amount of $2,000,000.00, as to which the principal sum of $1,599,901.10 remained unpaid and due as of September 23, 2021 (the "***LOC Loan***");

(b)     enforce the Bank's rights in connection with certain security agreements and collateral assignments between the Bank, the Borrowers and Mark A. Sayers (together, collectively, "***the Pledgors***") pursuant to which they pledged certain personal property they owned to the Bank in connection with the LOC Loan; and

(c)     enforce the Bank's rights in connection with a certain absolute and unconditional commercial loan payment guaranty executed by the Guarantors in connection with the LOC Loan.

## IV.     FACTUAL BACKGROUND

**A.     The Loan Transaction.**

9.     The Bank and the Borrowers entered into a certain Loan Agreement dated March 21, 2019, pursuant to which the Bank made the LOC Loan to the Borrowers. *See* Loan Agreement attached hereto as Exhibit 1.

10.     The Bank and the Borrowers amended the Loan Agreement in an Amendment No. 1 and Loan Rider dated August 7, 2019, an Amendment No. 2 and Loan Rider dated March 26, 2020, an Amendment No. 3 and Waiver to Loan Agreement dated February 12, 2021, and an Amendment No. 4 to Loan Agreement dated February 19, 2021 (collectively, "***the Amendments***"). *See* Amendment No. 1, attached hereto as Exhibit 2, Amendment No. 2 attached hereto as Exhibit 3, Amendment No. 3 attached hereto as Exhibit 4, and Amendment No. 4 attached hereto as Exhibit

3

5.

11.    Pursuant to the Loan Agreement, due and owing to the Bank are:

    a.    the principal sum of $1,599,901.10 (as of September 23, 2021);

    b.    contract interest that has accrued and not been paid;

    c.    default interest that has accrued and not been paid;

    d.    attorneys' fees and costs that have accrued and have not been paid; and

    e.    all other fees and charges due and payable to the Bank pursuant to the Loan Agreement and any related agreements, which have accrued and not been paid.

(collectively, the "***Indebtedness***").

**B.    The Security Agreements**.

12.    As security for the LOC Loan, Sayers Construction executed and delivered to the Bank a certain Security Agreement (Multiple Use) dated March 21, 2019. *See* 2019 Security Agreement attached hereto as Exhibit 6".

13.    In connection with the Second Amendment, the Borrowers each executed and delivered to the Bank a certain Security Agreement (Multiple Use) dated March 26, 2020. *See* 2020 Security Agreement attached hereto as Exhibit 7.

14.    Each of the Borrowers, as "Pledgor," pledged to the Bank the following collateral (collectively the "***Collateral***") as set forth in the Security Agreements:

    (a) All accounts, and all chattel paper, instruments, deposit accounts, letter of credit rights, and general intangibles related thereto; and all returned or repossessed goods which, on sale or lease, resulted in an account.
    (b) All inventory.
    (c) All equipment and fixtures now owned or hereafter acquired by the Pledgor ….
    (d) All negotiable and nonnegotiable documents of title covering any Collateral.
    (e) All accessions, attachments and other additions to the Collateral, and all tools, parts and equipment used in connection with the Collateral.
    (f) All substitutes or replacements for any Collateral, all cash or non-cash proceeds (including insurance proceeds), products, rents and profits of the Collateral, and all income, benefits

4

and property receivable on account of the Collateral and all supporting obligations covering any Collateral.

(g) All books, data and records pertaining to any Collateral, whether in the form of a writing, photograph, microfilm or electronic media, including but not limited to any computer-readable memory and any computer software necessary to process such memory.

*See* Exh. 6, § 1 at p. 1; Exh. 7, § 1 at p. 1.

15. Subsequently, in connection with the Amendment No. 3, Sayers Construction and Mark A. Sayers executed and delivered to the Bank a Collateral Assignment of Claims and Judgment (the "***Claims Assignment***") with respect to their  civil lawsuit against Philadelphia Indemnity Insurance Company, the City of Bryan, Texas, and Bryan Texas Utilities in an action styled *Mark Sayers and Sayers Construction, LLC v. Philadelphia Indemnity Insurance Company, The City of Bryan, Texas and Bryan Texas Utilities,* 272nd Judicial District, Brazos County, Texas, Cause No. 20-000962-CV-272 arising from a contract between Sayers Construction and Bryan Texas Utilities for the construction of a 138-kV electrical transmission line from Snook to Steele Store Substation (the "***BTU Claims***"). *See* Claims Assignment attached hereto as Exhibit 8.

16. To perfect and notify others of its interests in and to the Collateral and the BTU Claims, the Bank filed the following financing statements with the Texas Secretary of State:

  a.  a UCC-1 Financing Statement against Sayers Construction filed June 30, 2017, under File No. 17-0022431404;

  b.  a UCC-1 Financing Statement against Canyon Power filed on August 9, 2019 under Filing No. 19-0030471499;

  c.  a UCC-1 Financing Statement against Sayers Construction filed March 2, 2021, under Filing No. 21-0008120670 (BTU Claims); and

  d.  a UCC-1 Financing Statement against Mark Sayers filed March 2, 2021, under Filing No. 21-0008120559 (BTU Claims).

(collectively, the "***Financing Statements***"). *See* Sayers Construction Financing Statement

5

259283936v.4

attached hereto as Exhibit 9, Canyon Power Financing Statement attached here to as Exhibit 10, Sayers Construction Financing Statement (BTU Claims) attached here to as Exhibit 11, and Mark Sayers Financing Statement (BTU Claims) attached hereto as Exhibit 12.

## C.  The Principals' Guaranty.

17.     As additional security for the repayment of the Indebtedness, the Guarantors executed and delivered to the Bank a Guaranty of the obligations under the LOC Loan (the "***Guaranty***"), pursuant to which the Guarantors jointly and severally, absolutely and unconditionally, guaranteed the payment of the Indebtedness to the Bank when due, including any and all advances, debts, obligations and liabilities, plus any reasonable attorneys' fees and costs incurred by the Bank in the enforcement of the Guaranty. *See* Guaranty attached hereto as Exhibit 13.

18.     Pursuant to the terms of the Guaranty, the Guarantors waived certain rights and defenses, which included, without limitation, any right to require the Bank to proceed against the Borrowers, or to proceed against or exhaust any security for the Indebtedness, or to pursue any other remedy in the Bank's power whatsoever, or to raise any defense based on any claim that the Guarantors' obligations exceed or are more burdensome than those of the Borrowers. *See* Exh. 13 at §§ 5(a)(i), 5(a)(ii), 5(a)(iv), and 5(b)(ix).

19.     The Guarantors further waived any rights of subrogation, reimbursement, indemnification and contribution. The Guarantors expressly waived their rights under TEX. PROP. CODE §§ 51.003, 51.004 and 51.005 and the benefits of Chapter 43 of the TEX. CIV. PRAC. & REM. CODE, TEX. CIV. PRAC. & REM. CODE § 17.001 and TEX. R. CIV. PROC. 31. *See* Exh. 13 at §§ 5(d) and 5(e).

20.     The Loan Agreement, the Security Agreements, the Guaranty and all other

6

documents related to the LOC Loan shall be collectively referred to as the "***Loan Documents***.*"

21.    The Bank is the present holder of the Loan Documents.

**D.    The Defaults under the Loan Agreement.**

22.    In the Loan Agreement, the Borrowers covenanted that they would not incur debts

to parties other than the Bank or the Bank's affiliates except with the Bank's consent:

> The Borrower agrees, so long as credit is available under this Agreement and until the Bank is repaid in full, the Borrower shall [not]… have outstanding or incur any direct or contingent liabilities or lease obligations (other than those to the Bank or to any affiliate of the Bank), or to become liable for the liabilities of others, without the Bank's written consent.  This does not prohibit:  (a) Acquiring goods, supplies or merchandise on normal trade credit. (b) Liabilities, lines of credit and leases in existence on the date of this Agreement disclosed in writing to the Bank.

*See* Exh. 1 at § 7.5, pp. 6, 7-8.

23.    The Borrowers further covenanted that they would not grant any lien or security

interest on any of their assets without the Bank's consent:

> The Borrower agrees, so long as credit is available under this Agreement and until the Bank is repaid in full, the Borrower shall [not]… create, assume or allow any security interest or lien (including judicial liens) on property the Borrower now or later owns without the Bank's written consent.  This does not prohibit:  (a) Liens and security interests in favor of the Bank or any affiliate of the Bank.  (b) Liens for taxes not yet due. (c) Liens outstanding on the date of this Agreement disclosed in writing to the Bank.

*See* Exh. 1 at § 7.6, pp. 6, 8.

24.    Pursuant to the Amendment No. 2 to the Loan Agreement, the Borrowers agreed to

repay the LOC Loan on or before September 21, 2021 (the "***Maturity Date***"). *See* Exh. 3, § 2.1, p.

1.

25.    Upon information and belief, Sayers Construction obtained a loan of $407,587.89

from Fox Capital Group in June 2021 (the "***Fox Capital Loan***").

26.    Sayers Construction did not provide notice of or obtain the Bank's consent to the Fox

7

Capital Loan.

27.    Upon further information and belief, the Borrowers permitted additional liens to be filed against the Borrowers' assets, including the specific Collateral Borrowers had pledged to the Bank. These liens are identified in financing statements that were filed with the Secretary of State under Filing Nos. 21-0001425611 (Canyon Power), 21-0001688066 (Canyon Power), 21-0020320919 (Canyon Power), 21-0022875956 (Canyon Power and Sayers Construction), and 21-0020318855 (Sayers Construction) (collectively, the "***Additional Liens***"). *See* Additional Liens attached hereto as Exhibit 14.

28.    The Borrowers did not provided notice of or obtain the Bank's consent to the Additional Liens.

29.    By obtaining the Fox Capital Loan without the consent of the Bank, Sayers Construction breached Section 7.5 of the Loan Agreement, which constitutes an Event of Default under Section 8.12 of the Loan Agreement.

30.    By granting the Additional Liens without the consent of the Bank, the Borrowers breached Section 7.6 of the Loan Agreement, which also constitutes an Event of Default under Section 8.12 of the Loan Agreement.

31.    By letter dated August 26, 2021 (the "***Initial Default Notice***"), the Bank notified the Borrowers and the Guarantors (collectively, "***the Obligors***") of the Initial Defaults. *See* Initial Default Notice attached hereto as Exhibit 15.

32.    Despite the Initial Default Notice and the requirement of the Amendment No. 2 that the Borrowers repay the Indebtedness under the Loan Agreement on or before the Maturity Date (September 21, 2021), as of the date hereof, neither the Borrowers nor the Guarantors have repaid the Indebtedness under the Loan Agreement. Their failure constitutes a further Event of Default

under Section 8.1 of the Loan Agreement.

33.     By letter dated September 23, 2021 (the "***Supplemental Default Notice***"), the Bank notified the Obligors of the Maturity Default and demanded payment in full of all Indebtedness under the Loan Agreement on or before September 30, 2021. *See* Supplemental Default Notice attached hereto as Exhibit 16. The Supplemental Default Notice specified that if the Indebtedness was not repaid in full by September 30, 2021, the Bank would impose interest as of the Maturity Date pursuant to Section 4.9 of the Loan Agreement. *See* Exh. 16, at p. 2.

34.     The Supplemental Default Notice further mandated that, should the Obligors fail to remit payment, on October 1, 2021 (the "***Turnover Date***"), the Borrowers must (i) provide the Bank with a detailed report setting forth all accounts receivable of the Borrowers including the name and address of each account debtor and the invoice number, amount and due date for all unpaid invoices of any account debtor and (ii) assemble and deliver the Collateral to the Bank. *See* Exh. 16, at pp. 3-4.

## V.     CAUSES OF ACTION

**COUNT I:        BREACH OF CONTRACT – LOAN AGREEMENT (BORROWERS)**

35.     The Bank refers to and re-alleges each of the foregoing allegations of this Original Complaint as if fully set forth herein.

36.     The Loan Agreement and the Amendments are valid and enforceable contracts.

37.     The Bank has performed its obligations under the Loan Documents.

38.     The Borrowers defaulted under the terms of the Loan Agreement by, among other things, obtaining the Fox Capital Loan, granting the Additional Liens, and failing to repay the Indebtedness on the Maturity Date and after the Bank's demand.

39.     As a consequence of Borrower's breaches, the Bank has been damaged. Such

9

damages consist of, among other things, the unpaid principal sum of $1,599,901.10 (as of September 23, 2021), plus accrued and accruing interest, default rate interest, late charges, contractual costs, and all other charges due to the Bank under the Loan Documents.

40.    The Bank is entitled to a money judgment against the Borrowers in the principal sum of $1,599,901.10 (as of September 23, 2021), plus accrued and accruing interest, default rate interest, late charges, contractual costs, and all other charges due to the Bank under the Loan Documents.

**COUNT II:    ATTORNEYS' FEES AND EXPENSES – LOAN AGREEMENT (BORROWERS)**

41.    The Bank refers to and re-alleges each of the foregoing allegations of this Original Complaint as if fully set forth herein.

42.    The Loan Agreement provides that in the event of a default thereunder, the Borrowers would be liable for all legal fees, costs and expenses incurred by the Bank in connection with the enforcement of its remedies against the Borrowers. *See* Exh. 1 at § 9.9(c).

43.    The Bank has retained the undersigned counsel to pursue enforcement of the Bank's rights and remedies under the Loan Documents, including to represent the Bank's interests in bringing this action against the Borrowers.

44.    The Bank is entitled to recover a money judgment against the Borrowers for its reasonable attorneys' fees and expenses under the Loan Documents.

**COUNT III:    BREACH OF CONTRACT – SECURITY AGREEMENTS (PLEDGORS)**

45.    The Bank refers to and re-alleges each of the foregoing allegations of this Original Complaint as if more fully set forth herein.

46.    The Security Agreements and the BTU Claims Assignment are valid and enforceable contracts.

10

47.     The Bank has performed its obligations under the Loan Documents, including the Security Agreements and the BTU Claims Assignment.

48.     The Borrowers defaulted under the terms of the Loan Agreement by, among other things, obtaining the Fox Capital Loan, granting the Additional Liens, and failing to repay the Indebtedness on the Maturity Date and after the Bank's demand.

49.     Pursuant to the Security Agreements, the Bank is entitled, *inter alia*: (a) to take possession of the Collateral; (b) to require the Obligors to provide or to provide directly itself a notice directing all account debtors to forward all payments and proceeds of the Collateral to the Bank; (c) to require the Obligors to assemble the Collateral and make the Collateral available to the Bank at a place designated by the Bank; and/or, (d) to dispose of the Collateral by selling or leasing same and to apply the proceeds thereof to the Borrowers' obligations of under the Loan Agreement. *See* Exh. 6, § 6, pp. 4-5; Exh. 7, § 6, pp. 4-5.

50.     Further, pursuant to the BTU Claims Assignment, the Bank is entitled to "demand and receive satisfaction of the Assigned [BTU] Claims … and take all lawful measures for the recovery of the money presently due and unpaid or to become due on said Assigned Claims…." *See* Exh. 8. at p. 2.

51.     The Bank is entitled to a judgment foreclosing upon its security interest in the Collateral and the BTU Claims, awarding to the Bank immediate possession and control of the Collateral and the BTU Claims, and permitting the Bank to dispose of same and apply the proceeds thereof to the obligations and liabilities of the Pledgors in accordance with Article Nine of the Uniform Commercial Code. *See* TEX. BUS. & COM. CODE §§ 9.101 *et seq.* (the "*UCC*").

**COUNT IV:      ATTORNEYS' FEES AND EXPENSES - SECURITY AGREEMENTS (PLEDGORS)**

52.     The Bank refers to and re-alleges each of the foregoing allegations of this Original

11

Complaint as if more fully set forth herein.

53.    The Security Agreements provide that in the event of a default thereunder, the Pledgors would be liable for all legal fees, costs and expenses incurred by the Bank in connection with the enforcement of its remedies against the Pledgors. *See* Exh. 6, at § 9(g), p. 6; Exh. 7 at § 9(g), p. 6.

54.    The Bank retained the undersigned counsel to pursue enforcement of the Bank's rights and remedies under the Loan Documents, including to represent the Bank's interests in bringing this action against the Pledgors.

55.    The Bank is entitled to a money judgment against the Pledgors for its reasonable attorneys' fees and expenses under the Loan Documents.

**COUNT V:        POSSESSION, SEQUESTRATION AND REPLEVIN OF PERSONAL PROPERTY (PLEDGORS)**

56.    The Bank refers to and re-alleges each of the foregoing allegations of this Original Complaint as if more fully set forth herein.

57.    The Bank is, and at all times herein mentioned, was the holder of a perfected, first-priority security interest in the Collateral and the BTU Claims.

58.    As a result of the Events of Default, and the terms of the Loan Agreement, the Security Agreements, and the BTU Claim Assignment, the Bank is entitled to immediate and exclusive possession of the Collateral and the BTU Claims.

59.    Pursuant to the Supplemental Default Notice, the Bank demanded that the Pledgors turnover the Collateral to the Bank or its agents as of the Turnover Date.

60.    The Pledgors have failed and refused to turn over the Collateral and the BTU Claims since the Turnover Date.

61.    During, and as a proximate result of Pledgors' wrongful possession and detention

12

of the Collateral and the BTU Claims, the Bank has suffered the loss of the use and enjoyment of the Collateral and the BTU Claims.

62.     The Bank has suffered damages in an amount to be determined at trial, including but not limited to:

a.     the value of all amounts paid to the Pledgors after the Turnover Date in respect of the Collateral and the BTU Claims;

b.     the reasonable value of any Collateral and the BTU Claims consumed in the Pledgors' operations after the Turnover Date;

c.     the reasonable rental value of any Collateral used by the Pledgors after the Turnover Date;

d.     the amounts received by the Pledgors for the use, sale or lease of the Collateral and the BTU Claims from and after the Turnover Date to the date the Collateral and the BTU Claims are delivered to the Bank; and

e.     the deterioration of, damage to, and depreciation of the Collateral and the BTU Claims from and after the Turnover Date to the date the Collateral and the BTU Claims are delivered to the Bank.

63.     In wrongfully possessing and detaining the Collateral and the BTU Claims, the Pledgors acted willfully, maliciously, and in wanton disregard of the Bank's rights.  Therefore, the Bank seeks exemplary and punitive damages from the Pledgors in an amount to be determined by the jury.

**COUNT VI:      CONVERSION (PLEDGORS)**

64.     The Bank refers to and re-alleges each of the foregoing allegations of this Original Complaint as if more fully set forth herein.

65.    The Borrowers defaulted under the Loan Agreement, failed to make payment to the Bank of the sums due to it, and refused, and continue to refuse, to deliver possession and control of the Collateral.

66.    Upon information and belief, the Pledgors have continued to use the Collateral despite their defaults, their obligation to return the Collateral, and their failure to make payment to the Bank therefor.

67.    The Collateral has been intentionally and wrongfully converted and detained by the Pledgors.

68.    As a result of the failure of the Pledgors to surrender the Collateral and their continued improper usage and wrongful conversion of the Collateral, the Bank has suffered damages in an amount to be determined at trial.

69.    Accordingly, the Bank is entitled to a judgment requiring the Pledgors to surrender the Collateral and to a money judgment against the Pledgors in an amount to be determined at trial.

**COUNT VII:    UNJUST ENRICHMENT (PLEDGORS)**

70.    The Bank refers to and re-alleges each of the foregoing allegations of this Original Complaint as if more fully set forth herein.

71.    Upon information and belief, the Pledgors continued to use the Collateral despite the Events of Default and their lack of any right to possess or use same.

72.    Upon information and belief, the Pledgors have realized revenues from their illegal possession and use of the Collateral, and have been unjustly enriched in the amount of the value of the Collateral and any income the Pledgors realized or received due to their improper possession of same.

73.    Accordingly, the Bank is entitled to a money judgment against the Pledgors in an

14

amount to be determined at trial.

**COUNT VIII:        GUARANTY (MARK A. SAYERS)**

74.    The Bank refers to and re-alleges each of the foregoing allegations of this Original Complaint as if more fully set forth herein.

75.    As set forth above, the Borrowers defaulted under the Loan Agreement.

76.    As a result of the Borrowers' defaults under the Loan Agreement, Mark A. Sayers is liable to the Bank for the Indebtedness pursuant to the terms of the Guaranty, but has failed to make payment to the Bank therefor.

77.    The Bank reasonably relied upon the Guaranty from Mark A. Sayers in advancing sums to the Borrowers pursuant to the Loan Agreement.

78.    The Bank has performed all terms and conditions precedent on its part to be performed pursuant to the terms of the Guaranty.

79.    Pursuant to the Guaranty, Mark A. Sayers owes and the following amounts are due: the principal sum of $1,599,901.10 (as of September 23, 2021), plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees, and all other charges due to the Bank related to the LOC Loan.

80.    Accordingly, the Bank is entitled to a money judgment against Mark A. Sayers in the principal sum of $1,599,901.10 (as of September 23, 2021), plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees, and all other charges due to the Bank related to the LOC Loan.

**COUNT IX:  GUARANTY (JENNIFER SAYERS)**

81.    The Bank refers to and re-alleges each of the foregoing allegations of this Original

15

Complaint as if more fully set forth herein.

82.     The Borrowers defaulted under the Loan Agreement.

83.     As a result of the Borrowers' defaults under the Loan Agreement, Jennifer Sayers is liable to the Bank for the Indebtedness pursuant to the terms of the Guaranty, but has failed to make payment to the Bank therefor.

84.     The Bank reasonably relied upon the Guaranty from Jennifer Sayers in advancing sums to the Borrowers pursuant to the Loan Agreement.

85.     The Bank has performed all terms and conditions precedent on its part to be performed pursuant to the terms of the Guaranty.

86.     Pursuant to the Guaranty, Jennifer Sayers owes and the following amounts are due: the principal sum of $1,599,901.10 (as of September 23, 2021), plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees, and all other charges due to the Bank related to the LOC Loan.

87.     Accordingly, the Bank is entitled to a money judgment against Jennifer Sayers in the principal sum of $1,599,901.10 (as of September 23, 2021), plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees, and all other charges due to the Bank related to the LOC Loan.

## VI.    ATTORNEY'S FEES

88.     The Bank is entitled to its reasonable attorneys' fees under both the contractual language of the Loan Documents, as well as pursuant to Tex. Civ. Prac. & Rem. Code § 38.001 *et seq.*

## VII.    PRAYER

WHEREFORE, PREMISES CONSIDERED Plaintiff requests that Defendants be cited to

16

appear and answer and that, on final trial, Plaintiff have the following:

1.  Judgment against the Borrowers for breach of the Loan Agreement in an amount that Plaintiff will prove at trial in excess of $75,000;

2.  Judgment of foreclosure of Plaintiff's lien in the Collateral and the BTU Claims pursuant to TEX. BUS. & COM. CODE § 9.609 and other applicable law;

3.  A writ of sequestration and replevin and judgment for possession of the Collateral pursuant to TEX. CIV. PRAC. & REM. CODE § 62.001 and other applicable law;

4.  Judgment against the Guarantors for breach of the Guaranty in an amount that Plaintiff will prove at trial in excess of $75,000;

5.  Prejudgment interest as provided in the Loan Agreement at the default rate;

6.  Attorneys' fees and all costs incurred in connection with Defendants' breach of the Loan Agreement and the Guaranty;

7.  Post-judgment interest as provided by law from the date of the judgment until paid;

8.  Costs of suit; and

9.  Such other and further relief, both general and special, at law or in equity, to which Plaintiff justly may be entitled.

Respectfully submitted this 2nd day of December 2021.

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

By:  _/s/ Jillian J. Keith_
Jillian J. Keith
State Bar No. 24013671
jillian.keith@wilsonelser.com

901 Main Street, Suite 4800
Dallas, TX 75202
(214) 698-8000 (Main)
(214) 698-1101 (Fax)

*Counsel for Plaintiff Bank of America, N.A.*

259283936v.4

## AFFIDAVIT IN SUPPORT OF PLAINTIFF'S COMPLAINT

STATE OF CONNECTICUT   )
                           )ss.
COUNTY OF Hartford   )

BARBARA PIETRZAK, of full age, being duly sworn, upon her oath, deposes and says:

1.    I am a Senior Vice President of Bank of America, N.A. (the "*Bank*"), Plaintiff in this action. I am in charge of the Bank's line of credit loan to Sayers Construction, LLC and Canyon Power Solutions, LLC. If asked, I am fully capable of testifying to the following:

2.    I have read the foregoing Original Verified Complaint and all the allegations contained therein.  Except as to allegations alleged upon information and belief, which allegations I believe to be true based upon my investigation and due diligence, all the allegations in the Original Verified Complaint are true based on my personal knowledge, upon my review of public records, the records of the Bank or information provided to the Bank, and from information provided by representatives, members and employees of Sayers Construction and Canyon Power, including its principals, Mark A. Sayers and Jennifer Sayers.

3.    I swear the foregoing is true upon penalty of perjury.

FURTHER, AFFIANT SAYETH NAUGHT.

 

_____
BARBARA PIETRZAK

Sworn and subscribed to before
me this _22_ day of November, 2021

_____
NOTARY PUBLIC    **DOROTA CHUDZ**
                         *NOTARY PUBLIC*
           MY COMMISSION EXPIRES NOV. 30, 2022

18

259283936v.4